UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DR. JOSEPH O. OLUBADEWO                    CIVIL ACTION

VERSUS                                      NO. 07-4587

XAVIER UNIVERSITY                           MAGISTRATE JUDGE
                                            JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

Plaintiff, Dr. Joseph O. Olubadewo, filed this action against his former employer,

Xavier University ("Xavier" or the "University"), alleging that Xavier discriminated

against him on the basis of his race (black), gender (male), nationality (Nigerian) and age

(60 at the time of the incidents), and retaliated against him, in violation of Title VII, 42

U.S.C. § 2000e-5; 42 U.S.C. § 1981; and the Age Discrimination in Employment Act.

29 U.S.C. § 621 et seq.[1]  He also brings claims for breach of contract under Louisiana

law.   Complaint, Record Doc. No. 1.

---

[1]Plaintiff also asserts "claims" under 42 U.S.C. §§ 1981a and 1988.  These statutes do not provide
independent causes of action, but merely provide remedies for unlawful employment discrimination and
other civil rights violations.  Gordon v. City of Hoisington, No. 07-3161-SAC, 2008 WL 347692, at *2
n.12 (D. Kan. Feb. 7, 2008) (citing Estes v. Tuscaloosa County, 696 F.2d 898, 901 (11th Cir. 1983));
Bennett v. Calabrian Chems. Corp., 324 F. Supp. 2d 815, 839 (E.D. Tex. 2004), aff'd,126 Fed. Appx.
171, 2005 WL 643278 (5th Cir. 2005) (citing Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998))
(additional citations omitted).

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties. Record Doc. No. 11.

Xavier filed a motion for summary judgment, supported by affidavits, excerpts from deposition transcripts and authenticated documents. Record Doc. No. 25. Dr. Olubadewo filed a timely opposition memorandum, supported by several complete deposition transcripts, some of the same documents that defendant had submitted and a few unauthenticated documents.[2] Record Doc. No. 31. Although I have not considered the unauthenticated documents, Fed. R. Civ. P. 56(e)(1), the outcome of this decision would be unchanged if I had considered them.

Xavier received leave to file a reply memorandum, Record Doc. Nos. 33, 35, 36, to which it attached several exhibits. All of these exhibits were already in the summary judgment record, although some of them have been confusingly re-numbered.

Plaintiff received leave to file a supplemental memorandum to make an argument that he had inadvertently omitted from his original memorandum. Record Doc. Nos. 38, 40, 41.

---

[2]The unauthenticated documents are Plaintiff's Exh. C, personnel records of Dr. Cheryl Ann Gauthier; Plaintiff's Exh. D, defendant's response to plaintiff's Equal Employment Opportunity Commission charge; Plaintiff's Exh. E, plaintiff's resume; Plaintiff's Exh. F, Dr. Gauthier's curriculum vitae; Plaintiff's Exh. J, personnel records of Dr. Duane E. Johnson.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**.

I.     THE ARGUMENTS OF THE PARTIES

The events underlying plaintiff's complaint began with Hurricane Katrina's landfall near New Orleans on August 29, 2005, and the subsequent catastrophic flooding of most of the city, including the University campus. Before the hurricane, Dr. Olubadewo was a tenured professor in the Basic and Pharmaceutical Sciences Division of Xavier's College of Pharmacy (the "College").

Plaintiff alleges in his complaint that Xavier discriminated against him based on his race, gender, nationality and age, and retaliated against him for his prior complaints of unequal treatment, when it terminated his employment after Hurricane Katrina in October 2005 and failed to rehire him before the University reopened in January 2006. He asserts in his complaint that Xavier again discriminated and retaliated against him when it failed to rehire him for an available position in July 2006 for the 2006-2007 academic year. Finally, his complaint asserts breach of contract claims based on the same events.

Xavier argues in its motion that no disputed issues of material fact exist and that it is entitled to summary judgment as a matter of law on all of plaintiff's claims for the

following reasons: (1) plaintiff's claims under Title VII and the Age Discrimination in Employment Act of termination and failure to re-employ him are untimely because he failed to file a charge with the Equal Employment Opportunity Commission within the applicable limitations period; (2) plaintiff's claims under Section 1981 for discriminatory failure to rehire him are untimely because they prescribed one year from the allegedly discriminatory act; (3) his claims of discriminatory termination and retaliation are barred because he failed to file a charge with the Equal Employment Opportunity Commission concerning these claims; (4) if his claims are not barred, Dr. Olubadewo cannot establish a prima facie case of discrimination or retaliation; (5) if he can establish a prima facie case, he cannot rebut Xavier's legitimate, nondiscriminatory, nonretaliatory reasons for its actions; and (6) plaintiff has no claim for breach of contract at the time of termination or thereafter because Xavier validly terminated his contract in October 2005.

In his opposition memorandum, Dr. Olubadewo argues that a third discriminatory failure to rehire him and/or breach of contract occurred in connection with a <u>current</u> vacancy at the College. However, he never moved to amend his complaint in this court to assert any claims concerning any current vacancy. The court's deadline to amend pleadings passed on September 8, 2008. The final pretrial conference has already occurred and trial is set to commence in two (2) weeks. Therefore, Dr. Olubadewo has

no claim before the court concerning Xavier's third failure to rehire him,[3] and I have not considered his arguments concerning that unasserted claim.

As to his claims that are actually before the court, plaintiff argues that numerous material fact issues remain in dispute and that those factual controversies, if viewed in the light most favorable to him, demonstrate that he can establish a prima facie case of discrimination and/or retaliation and further that defendant's proffered reasons for its actions were pretexts for discrimination and/or retaliation. He contends that his discrimination and retaliation claims are timely. Alternatively, he argues that the limitations periods were equitably tolled and/or that Xavier should be equitably estopped from arguing that his Equal Employment Opportunity Commission charge was untimely or that he failed to exhaust his administrative remedies. Finally, he contends that he has a valid breach of contract claim because his contract was not validly terminated and he was never told that he would lose his tenure-based contractual rights, which survived the alleged termination of his contract.

III.   THE UNDISPUTED FACTS

The following material facts are undisputed, solely for purposes of the pending motion for summary judgment. These facts are taken from the affidavit of Dr. Norman

---

[3]Furthermore, the record contains no charge filed by Dr. Olubadewo with the Equal Employment Opportunity Commission that alleges discrimination or retaliation in connection with any current vacancy. Thus, plaintiff has not exhausted his administrative remedies concerning such allegations.

C. Francis, the president of Xavier, Defendant's Exh. II; the affidavit of Dr. Elizabeth Barron, Xavier's vice-president for academic affairs from July 2005 until June 2008, Defendant's Exh. V; the affidavit of Dr. Wayne Harris, Dean of the College of Pharmacy, Defendant's Exh. VIII; and the deposition testimony of Dr. Robert Blake, the chair of the Basic and Pharmaceutical Sciences Division; Dr. Harris; and Dr. Olubadewo; which are attached in their entirety to plaintiff's opposition memorandum as Plaintiff's Exhs. A, B and K, respectively.

Dr. Olubadewo taught pharmacology at Xavier from August 1985 through August 2005. He was a 60-year-old, black, Nigerian, male, tenured faculty member in the Basic and Pharmaceutical Sciences Division of the College on August 29, 2005. As a result of Hurricane Katrina, Xavier's Board of Trustees decided in September 2005 to terminate all faculty contracts. It declared a condition of financial exigency in October 2005. The University terminated the employment of all faculty members, except those needed to respond directly to the disaster and to plan for the University's reopening in January 2006.

In the course of that planning, administrative officials in September or early October 2005 directed each department of the University to cut its budget. The department heads were instructed to rehire only those faculty members minimally necessary to teach core courses. Xavier's vice-president for academic affairs, Dr. Barron,

instructed Dr. Harris, Dean of the College of Pharmacy, to determine the number of faculty that the College needed. She told him that financial considerations were a priority and that he was not bound by the former tenure status of any former faculty member. After talking with Dr. Barron, Dr. Harris knew that the University had to make difficult budget decisions, including deciding which faculty members could be recalled, because no one knew in the aftermath of Hurricane Katrina how many students would return or how much tuition revenue the University could expect. He knew that these budget considerations "would apply to the college of pharmacy as well as to the college of arts and sciences, because we're all connected." Plaintiff's Exh. B, Dr. Harris deposition at p. 106-07.

After talking with Dr. Barron in September or early October 2005, Dr. Harris informed Dr. Blake that only three pharmacologists in the Basic and Pharmaceutical Sciences Division would be rehired. Dr. Harris and Dr. Blake independently considered which professors should be rehired, and each came to the conclusion that Xavier should rehire Dr. Cheryl Ann Gauthier, a 43-year old black woman; Dr. Harold Komiskey, Jr., a 58-year old white man; and Dr. Patience Obih, a 56-year old black, Nigerian woman; and that Dr. Olubadewo should not be rehired. Dr. Harris made the ultimate decision and conveyed it to Dr. Barron. When Dr. Barron received Dr. Harris's recommendation, she

conveyed it to Dr. Francis, who accepted it. These three professors were rehired in October 2005.

By e-mail and identical letter, both dated October 28, 2005 and both of which plaintiff received, Dr. Francis informed Dr. Olubadewo that Hurricane Katrina had forced Xavier temporarily to close and that, as a result,

> [n]either faculty, staff nor the University was able to perform our respective 2005-06 contractual obligations. <u>Our primary source of income, tuition, ceased completely</u>. The inability to receive budgeted financial resources, while expenses were expected to grow, required the university to declare a condition of financial exigency. <u>By virtue of the non-performance circumstances, created by Hurricane Katrina, all faculty contracts have been terminated as being null and void</u>.
>
> The task for Xavier now is the realignment of our faculty teaching needs in relationship to the size of a January 2006 semester. <u>It is estimated that the enrollment, understandably, will be less than the August, 2005 registration</u>. Therefore, Xavier's departmental personnel requirements have been developed in keeping with student survey information. <u>The size of the departments has been reduced as of September 30, 2005</u>.
>
> I regret to inform you that an engagement for your teaching services is not contemplated for the coming two semesters. Should there be changes in the enrollments to warrant re-engagement, we trust you will be available to rejoin Xavier.

Defendant's Exh. III (emphasis added).[4]

When recommending whom to rehire in October 2005, Dr. Harris and Dr. Blake had no access to any personnel records because no one was able to return to the Xavier

---

[4]During his deposition, plaintiff authenticated the letter as the one he received. Plaintiff's Exh. K, Dr. Olubadewo deposition, at pp. 67-68.

campus at that time and they had no computer access.  They relied on their memories and their own judgment concerning the qualifications and experience of each faculty member.

Of the four pharmacologists, Dr. Olubadewo, Dr. Obih and Dr. Komiskey were veteran professors, while Dr. Gauthier had just become an assistant professor.  Although she had no prior teaching experience at Xavier, Dr. Blake believed that Dr. Gauthier had prior teaching experience elsewhere.

The salaries of these four professors were paid in part by tuition revenue, which came out of the University's general funds, and in part (or some in full) by grant money that had been obtained for a particular teacher's research.  When deciding how many and which faculty members to rehire, Dr. Harris considered the teaching workload, the source of funding for each teacher's salary and the courses needed in the College's curriculum.  He decided that four pharmacologists were "not required for us to deliver our curriculum minimally" because "we had excess faculty capacity in some areas [pre-Katrina]. . . . That was great if everything was normal and if we had enough extramural funding coming in to support [their salaries], but in the situation which we . . . faced, we did not need the same number . . . that we had."  Plaintiff's Exh. B, Dr. Harris deposition at pp. 116-17.

The source of funding for each professor's salary was an important factor in Dr. Harris's decision whom to rehire because, at that time, "financial resources [were] a

problem.  The more grant funding we could use for salary support, the better."  Id. at

p. 113.  He testified that his recommendations

> were based on the needs of the university.  The university was without
> income for the most part, and as we looked at faculty members, one of the
> major considerations was to what extent will university dollars be required
> for salary support, and so we looked at . . . the people we were reviewing
> [and] . . . how much salary support were they currently receiving or have
> they received over the more recent past.

Id. at 83-84.

Dr. Blake was also aware of the University's concerns about students not returning

and a "losing financial base."  Plaintiff's Exh. A, deposition of Dr. Blake at p. 25.  He

knew that the management team had to do everything it could to cut costs and that faculty

salary was the principal cost that could be cut immediately.  The University expected that

40 percent of its arts and sciences students would not return.  Thus, the "post-Katrina

financial scenario looked like" "a forced bare bones environment."  Id. at p. 31.

Although Drs. Blake and Harris "felt fairly certain that the majority of our students

would be coming back, unlike the undergraduate portion of the [University]," they

decided to cut as much as they could while maintaining enough faculty to teach essential

courses.  Id. at p. 26.  Dr. Blake initially argued to Dr. Harris that the College should not

have to cut any faculty because the College expected to lose only a very small percentage

of its students.  Dr. Harris responded that "'we,' the college of pharmacy–are part of

Xavier, Xavier is under hard times, we all have to cut wherever we can, and if that means

sacrifice, then so be it, it's for the good of the school."  Id. at p. 33.  Dr. Blake accepted

Dr. Harris's decision that some faculty members would not be rehired.  By January 2006,

only about one percent of pharmacy students had not returned.  Current enrollment in the

College is above its pre-Katrina level, while total University enrollment is now about 75

percent of its pre-Katrina level.  Plaintiff's Exh. B, Dr. Harris deposition at p. 146.

Dr. Blake testified that he recommended which faculty to rehire based on two

factors, teaching prowess and scholarship.  He testified that the three "seasoned"

professors, Drs. Olubadewo, Obih and Komiskey, were essentially equal in teaching

ability.  As to Dr. Gauthier, Dr. Blake knew that she was qualified and trained to teach

pharmacology.  Thus, when he considered whom to rehire, he considered her a part of

the group of four pharmacologists.  He felt that, although she had been a research

assistant at Xavier, her teaching prowess was "pretty much an unknown" because she had

not yet taught there.  Id. at p. 37.  Based on Dr. Harris's instructions, Dr. Blake did not

consider any person's tenure status.  Id. at p. 67.

In considering scholarship, Dr. Blake testified that his principal criterion was

which professors in the past four years (from the date when he became chair of the

division) had contributed the largest part of their salaries from external grant funds.  He

knew that Dr. Obih had contributed more than 50 percent for the first two years and 30

percent for the next two years, and that she had just phased out of external funding as Hurricane Katrina approached. Dr. Olubadewo had contributed about 18 percent of his salary during either 18 or 30 of the preceding 48 months. Dr. Komiskey had contributed 100 percent for four years. Dr. Gauthier had been a post-doctoral assistant in Dr. Harris's lab,

> so she was covered entirely by external grant funds. And I knew that he intended to continue that research project with her so that he would still be paying a goodly portion of her salary from his grant. . . . [O]nce she became a faculty member, I was expecting it to be on the order of 50 percent. . . . From a saving money point of view, the person who . . . was the most expensive at that point was Dr. Olubadewo.

Id. at p. 43-44. Thus, the funding criterion resulted in ranking Dr. Komiskey first, Dr. Obih second, Dr. Gauthier third based on anticipated continued funding of her salary through Dr. Harris's research project, and Dr. Olubadewo last. Id. at pp. 47-48.

After his employment was terminated in October 2005, Dr. Olubadewo knew from speaking with friends that other faculty members were being rehired. Plaintiff's Exh. K, Dr. Olubadewo deposition, at pp. 83-85. He sought legal counsel from attorney William Luscy "[w]hen it became clear that I wasn't going to be called back." Id. at p. 74. Dr. Olubadewo believed that he was not being called back because of discrimination based on his race, age, sex and national origin, which was why he sought legal counsel from Luscy. Id. at pp.74-76, 103. Luscy wrote three letters to Dr. Francis on plaintiff's behalf.

The first one, dated November 14, 2005, concerned Xavier's termination of plaintiff's contract and its rehiring of other faculty "who have less time at Xavier University, less tenure and are younger than Dr. Olubadewo." Defendant's Exh. II(A), at p.1. Luscy asked for a copy of plaintiff's contract with Xavier, so that he could advise plaintiff of his legal options. Id. at p. 2.

At some later time, Dr. Harris consulted Dr. Barron concerning an opening on the College faculty. Dr. Barron advised Dr. Harris that he did not have to rehire Dr. Olubadewo and that the College could advertise any open positions. Dr. Blake also understood that the College had no obligation to rehire Dr. Olubadewo and that Dr. Olubadewo could apply and be considered just like any other candidate who applied.

Xavier advertised the position and Dr. Olubadewo saw the advertisement. Dr. Olubadewo sent an e-mail to Dr. Francis during the summer of 2006, stating that he was available to return to work at Xavier, but he never submitted an application for any position, including the advertised position. Dr. Blake and Dr. Harris recommended that Dr. Duane Johnson, a former Dillard University faculty member, be hired for the advertised position. The University hired him in January 2007.

Dr. Olubadewo filed a charge of discrimination with the Equal Employment Opportunity Commission dated April 3, 2007. He alleged that Xavier had discriminated against him on August 1, 2006 when it failed to recall him to work. He charged that the

discrimination was based on his race, sex, national origin and age. Defendant's Exh. VII, Charge of Discrimination.[5]

IV.    ANALYSIS

    A.    Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. <u>Capitol Indem. Corp. v. United States</u>, 452 F.3d 428, 430 (5th Cir. 2006) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. <u>Hamilton v. Segue Software</u>

---

[5]Plaintiff authenticated the charge of discrimination during his deposition. Plaintiff's Exh. K, Dr. Olubadewo deposition, at p. 50.

Inc., 232 F.3d 473, 477 (5th Cir. 2000) (citing Anderson, 477 U.S. at 248); National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); <u>accord</u> <u>Duron v. Albertson's LLC</u>, No. 07-30290, 2009 WL 376837, at *2 (5th Cir. Feb. 17, 2009).

B.      <u>Plaintiff Failed to Exhaust His Retaliation Claims</u>

Xavier argues that Dr. Olubadewo did not exhaust his administrative remedies by filing a charge of either retaliation or discriminatory termination with the Equal Employment Opportunity Commission. "Filing a charge with the EEOC is a condition precedent to the filing of a title VII or Age Discrimination in Employment Act suit. A suit that flows from an EEOC complaint is limited by charges of discrimination 'like or related to' allegations contained in the EEOC complaint." <u>Stith v. Perot Sys. Corp.</u>, 122 Fed. Appx. 115, 2005 WL 210485, at *3 (5th Cir. 2005) (quoting <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 466 (5th Cir. 1970)). "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." <u>Thomas v. Texas Dep't of Crim. Justice</u>, 220 F.3d 389, 395 (5th Cir. 2000) (citation omitted). Any charge not alleged in the Equal Employment Opportunity Commission complaint and/or reasonably expected to grow

out of the Equal Employment Opportunity Commission  investigation is barred from judicial review.  Id.; Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995).

In the only charge in the record, filed on April 3, 2007, plaintiff complained of race, sex, nationality and age discrimination, by checking boxes for each of those grounds, which had occurred on August 1, 2006 when defendant failed to recall him to work.  Defendant's Exh. VII.  The "retaliation" box provided on the form was not checked, and there is no mention of any retaliatory conduct in the particulars of the charge.  The Equal Employment Opportunity Commission's investigation of this charge could not reasonably have been expected to encompass any retaliation when plaintiff checked the race, sex, nationality and age boxes on the form, but left the retaliation box blank.  Garrett v. Judson Indep. Sch. Dist., 299 Fed. Appx. 337, 2008 WL 4851317, at *6 n.7 (5th Cir. 2008).

Plaintiff states in his opposition memorandum that he did not know when he filed the charge on April 3, 2007 that defendant had retaliated against him by refusing to hire him for an open position when it hired Dr. Johnson in January 2007, and that he only found out about the hiring later.  Obviously, Dr. Olubadewo could not complain of retaliation about which he did not know.  But just as obviously, if he did not know about it and tell the Equal Employment Opportunity Commission about it, the Commission could not be expected to have investigated it.

Plaintiff argues, oddly, that <u>Xavier</u> should have known that he was arguing an unlawful failure to re-employ him based on a number of legal theories, and that <u>Xavier</u> knew he was available for employment when it hired Dr. Johnson. He cites no law for the proposition that <u>defendant</u> had an obligation to bring alternative legal theories to the attention of the Equal Employment Opportunity Commission.

Furthermore, plaintiff never filed a charge of retaliation concerning the hiring of Dr. Johnson, and more than 300 days have now passed since that event, precluding him from filing a timely charge now. Dr. Olubadewo failed to exhaust his retaliation claims. Accordingly, his retaliation claims are barred from judicial review and defendant is entitled to summary judgment on those claims.

On the other hand, plaintiff's claim of unlawful termination was within the scope of the investigation that could reasonably be expected to grow out of his charge of discrimination. Although the charge noted that Xavier failed to rehire him on August 1, 2006, the charge also refers to the letter from Dr. Francis on October 28, 2005, states that Dr. Olubadewo was "laid off" at that time, and that Dr. Francis trusted that he would be able to rejoin Xavier in two semesters. It is not unreasonable to expect that the circumstances of the layoff would figure into the Equal Employment Opportunity

Commission's investigation of plaintiff's charge of discriminatory failure to rehire him several months later.

Accordingly, plaintiff's unlawful termination claims were exhausted.

C.     Plaintiff's Title VII and Age Discrimination in Employment Act Claims Based on Events through November 25, 2005 Are Time-Barred

Based on Xavier's termination of plaintiff's employment on October 28, 2005 and its failure to rehire him for the semester that started on January 17, 2006, Dr. Olubadewo asserts claims of race, gender and national origin discrimination under Title VII and of age discrimination under the Age Discrimination in Employment Act. Xavier argues that these claims are barred because plaintiff did not file a timely charge of discrimination with the Equal Employment Opportunity Commission. Plaintiff responds that laches bars Xavier from raising the untimeliness argument when it did not raise the untimeliness issue before the Equal Employment Opportunity Commission or by a motion to dismiss under Fed. R. Civ. P. 12(b) in this case. Alternatively, he contends that equitable tolling and/or equitable estoppel preserved his claims because he had no way of knowing that defendant's assertion of financial exigency in the College of Pharmacy was not correct.

I find that plaintiff's discriminatory termination and failure to rehire claims based on events in October and November 2005 are barred by the statute of limitations applicable to Title VII and Age Discrimination in Employment Act claims. "In the state

of Louisiana an employee must file [his] charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct.  If the employee fails to submit a timely EEOC charge, the employee may not challenge the alleged discriminatory conduct in court." Hartz v. Administrators of Tulane Educ. Fund, 275 Fed. Appx. 281, 2008 WL 1766886, at *5 (5th Cir. 2008) (citing 42 U.S.C. §§ 2000e-5(e), (f)(1); Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2166-67 (2007);[6] Janmeja v. Board of Supervisors, 96 Fed. Appx. 212, 2004 WL 902304, at *1 (5th Cir. 2004)).  Plaintiff's failure to file a charge with the Equal Employment Opportunity Commission within the 300-day limitations period requires dismissal of his Title VII and Age Discrimination in Employment Act claims as time-barred . National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Tyler v. Union Oil Co., 304 F.3d 379, 382, 391 (5th Cir. 2002).

"[T]he operative date from which the limitations period begins to run is the date of notice of the adverse action, not the date that the adverse action takes effect." Hartz, 2008 WL 1766886, at *5 (citing Delaware State College v. Ricks, 449 U.S. 250, 256, 258 (1980); Clark v. Resistoflex Co., 854 F.2d 762, 765 (5th Cir. 1988); Stith, 2005 WL 210485, at *2).

---

[6]Congress recently amended Title VII to overrule Ledbetter in part on other grounds.  United States ex rel. Chartraw v. Cascade Healthcare Community, Inc., No. 05-708-AA, 2009 WL 588664, at *3 (D. Or. Mar. 5, 2009)); Maher v. International Paper Co., 1:08-cv-212, 2009 WL 577601, at *14 n.5 (W.D. Mich. Mar. 5, 2009).

Both parties in the instant case agree that all applicable limitations periods were suspended in the aftermath of Hurricane Katrina from August 29, 2005 through November 25, 2005 by Louisiana Governor Kathleen Blanco's Executive Orders. In addition, although the parties do not mention it, "the limitations period was arguably suspended, and therefore no portion of that period elapsed, during the period of September 1, 2005, through November 25, 2005" by order of this court's then-Chief Judge Helen G. Berrigan.[7] Mark v. Michael, No. 08-1261, 2008 WL 4365929, at *2 (E.D. La. Sept. 23, 2008) (Engelhardt, J., adopting report and recommendation of Shushan, M.J.).

In Executive Order No. KBB 2005-32, Governor Blanco declared that "[a]ll deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005 . . . . This Order . . . shall apply retroactively from Monday, August 29, 2005, through Sunday, September 25, 2005 . . . ." Thereafter, in Executive Order No. KBB 2005-48, the Governor amended the previous order to suspend these deadlines until

---

[7]On September 1, 2005, Chief Judge Berrigan signed an order suspending "all deadlines and delays, including liberative prescription and peremptive periods in cases pending or to be filed in this Court . . . until ordered otherwise." By subsequent order on November 3, 2005, Chief Judge Berrigan terminated the suspension effective November 25, 2005, except for good cause shown.

"at least October 25, 2005."  Finally, in Executive Order No. KBB 2005-67, the Governor extended the suspension of deadlines "until November 25, 2005."[8]

Plaintiff contends that he had the 300 days allowed by Title VII and the Age Discrimination in Employment Act, <u>plus</u> an additional 89 days because of Executive Order No. KBB 2005-67, for a total of 389 days, within which to file his discrimination charge.  Neither party addresses the effects of the Louisiana Legislature's ratification of Executive Order No. KBB 2005-67, La. Rev. Stat. § 9:5821(B), which was made <u>subject to</u> the provisions of La. Rev. Stat. §§ 9:5822 through 9:5825.

Other judges in this court have applied Executive Order No. KBB 2005-67, as ratified and amended by the Louisiana Legislature in La. Rev. Stat. §§ 9:5821 through 9:5825, to federal causes of action, including another discrimination case that involved Xavier (but which arose out of different events pre-dating Hurricane Katrina).  <u>Ganheart v. Xavier University</u>, No. 07-9703, 2009 WL 24227, at *5 (E.D. La. Jan. 2, 2009) (Knowles, M.J.).  However, the United States Fifth Circuit Court of Appeals has not yet addressed the operation of Executive Order No. KBB 2005-67 or these Louisiana statutes in a federal discrimination action.

---

[8]These orders are published in the notes preceding La. Rev. Stat. § 9:5821 (West 2007).

Section 9:5822(A) extended the suspension of prescription beyond the time span

previously ordered by Governor Blanco, but limited the extension, as follows:

> All prescriptions, including liberative, acquisitive, and the prescription of
> nonuse, and all peremptive periods shall be subject to a limited suspension
> and/or extension during the time period of August 26, 2005, through
> January 3, 2006; however, the suspension and/or extension of these periods
> shall be limited and shall apply only if these periods would have otherwise
> lapsed during the time period of August 26, 2005, through January 3, 2006.
> This limited suspension and/or extension shall terminate on January 3,
> 2006, and any right, claim, or action which would have expired during the
> time period of August 26, 2005, through January 3, 2006, shall lapse on
> January 4, 2006.

La. Rev. Stat. § 9:5822(A) (emphasis added).

Every Louisiana court that has considered Section 9:5822(A) has held that the

statute

> only provides that the time for instituting suit would be extended until
> January 4, 2006, for all claims that would have prescribed between
> November 25, 2005 and January 3, 2006. [Plaintiff's] claims would not
> have prescribed between November 25, 2005 and January 3, 2006. The
> statute does not have the effect of extending all prescriptive periods for
> eighty-nine days.

Assaleh v. Sherwood Forest Country Club Inc., 991 So. 2d 67, 73 (La. App. 1st Cir.

2008) (emphasis added); accord Compensation Specialties, L.L.C. v. New England Mut.

Life Ins. Co., No. 2008-1549, 2009 WL 367497, at *6 (La. App. 1st Cir. 2009); Bourque

v. Drake, 995 So. 2d 1215, 1219 (La. App. 3d Cir. 2008), writ denied, 998 So. 2d 724

(La. 2009); <u>Baldini v. East Jefferson Gen'l Hosp.</u>, 976 So. 2d 746, 751 (La. App. 5th Cir.), <u>writ denied</u>, 983 So. 2d 1288 (La. 2008).

Thus, Dr. Olubadewo is incorrect when he argues that he had 389 days after the allegedly discriminatory acts to file his discrimination charge.  Section 9:5822(A) only suspends or extends the limitations periods for claims that <u>would have otherwise lapsed</u> between August 26, 2005 and January 3, 2006.  The 300-day limitations period on Dr. Olubadewo's claims would have commenced to run, at the <u>earliest</u>, on October 28, 2005, the date of Dr. Francis's termination letter.  The limitations period on these claims would <u>not</u> have expired by January 3, 2006, which was only 67 days later.  Therefore, Section 9:5822(A) does <u>not</u> apply to plaintiff's discrimination claims.

Even assuming that, despite the modification made by La. Rev. Stat. 9:5822(A) to Executive Order No. KBB 2005-67, that order and/or Chief Judge Berrigan's order applies in the instant case to suspend the statute of limitations for Dr. Olubadewo's discrimination claims, the suspension would have lasted only <u>until</u> November 25, 2005, as defendant argues.  The limitations period began to run on November 26, 2005 as to any adverse employment actions taken against Dr. Olubadewo between August 29, 2005 and November 25, 2005.  According to his own testimony, plaintiff knew in late October 2005 that his employment had been terminated and that other faculty members who were younger, white, female and non-Nigerian had been rehired for the January 2006 semester,

while he had not been.  He sought legal counsel when it became clear that he was not going to be called back.  Dr. Olubadewo believed at that time that he was not being rehired because of discrimination based on his race, age, sex and national origin, and that was why he contacted attorney Luscy for legal counsel.  Plaintiff's Exh. K, Dr. Olubadewo deposition at pp.74-76, 84-85, 103.  Luscy's first letter to Dr. Francis on November 14, 2005 confirms that Dr. Olubadewo had consulted an attorney by that date concerning whether Xavier's termination of plaintiff's contract and its rehiring of younger, less experienced, non-tenured faculty instead of him were wrongful.  Absent the Governor's executive order or Chief Judge Berrigan's order suspending the limitations period through November 25, 2005, the limitations period would have begun to run in late October or early November 2005 when plaintiff knew these facts and believed that he had suffered discrimination.

Assuming that the statute of limitations was suspended until November 25, 2005 by Executive Order No. KBB 2005-67 and/or Chief Judge Berrigan's order, Dr. Olubadewo had 300 days from that date, or until September 21, <u>2006</u>, to file a charge with the Equal Employment Opportunity Commission concerning the termination of his employment and the University's failure to rehire him when it rehired the other three pharmacologists in October 2005.  However, he did not file his charge until April 3, <u>2007</u>, long after the limitations period had run.

Plaintiff's Title VII and Age Discrimination in Employment Act claims of discriminatory termination and failure to rehire him are therefore time-barred, unless an equitable doctrine saves them.  Morgan, 536 U.S. at 113; Tyler, 304 F.3d at 391.

D.      Equitable Doctrines Do Not Apply

Dr. Olubadewo argues that laches estops Xavier from raising its untimeliness arguments because defendant did not raise the untimeliness issue before the Equal Employment Opportunity Commission or through a motion to dismiss in this lawsuit. This argument is unpersuasive.

"'Laches is founded on the notion that equity aids the vigilant and not those who slumber on their rights.'  The defense consists of three elements:  (1) a delay on the part of the plaintiff in instituting suit; (2) that is not excused; and (3) that results in undue prejudice to the defendant's ability to present an adequate defense."  National Ass'n of Gov't Employees, 40 F.3d at 708 (quoting National Ass'n for the Advancement of Colored People v. N.A.A.C.P. Legal Defense & Educational Fund, Inc., 753 F.2d 131, 137 (D.C. Cir. 1985)) (citing Geyen v. Marsh, 775 F.2d 1303, 1310 (5th Cir. 1985)).

Dr. Olubadewo asserts that Xavier delayed inexcusably in asserting its limitations defenses in this action, resulting in prejudice to him.  However, Xavier's answer to plaintiff's complaint filed on October 26, 2007 clearly asserts the affirmative defenses of prescription and/or the statute of limitations, so he had notice of the defenses.  Record

Doc. No. 4, Answer, Second Affirmative Defense, at p. 1.  Moreover, Xavier's decision to forego filing a Rule 12(b)(6) motion in favor of a later filing of a summary judgment motion is neither inexcusable nor results in undue prejudice to plaintiff.

The only reported decision that plaintiff cites concerning defendant's supposed waiver of its untimeliness argument by failing to raise it before the Equal Employment Opportunity Commission is distinguishable.  That case concerned discrimination claims by a <u>federal</u> employee against his employer, a federal agency.  <u>Atkins v. Kempthorne</u>, No. 1:07CV314-D-D, 2009 WL 529848, at *1 (S.D. Miss. Mar. 2, 2009).  Federal employees have only a scant 45 days after the allegedly discriminatory act to contact their Equal Employment Opportunity representatives with their complaint, <u>id.</u>, while non-federal employees in Louisiana have 300 days to file their discrimination charges with the Equal Employment Opportunity Commission.  In addition, because the federal employer itself investigates the allegations, it may waive its untimeliness defense when it issues an administrative decision that addresses the merits of the claim without addressing timeliness.  <u>Id.</u>  Laches does not apply in the instant situation.

Plaintiff next argues that one type of equitable tolling applies to his claims because he "was unaware of the facts giving rise to the claim because of the defendant's intentional concealment of them."  <u>Stith</u>, 2005 WL 210485, at *2.  Similarly, equitable estoppel "'may properly be invoked when the employee's untimeliness in filing his

-27-

charge results from either the employer's deliberate design to delay the filing or actions that the employer should unmistakably have understood would result in the employee's delay.'" <u>Tyler</u>, 304 F.3d at 391(quoting <u>Clark</u>, 854 F.2d at 769). Equitable estoppel "does not hinge on intentional misconduct on the defendant's part. Rather, the issue is whether the defendant's conduct, innocent or not, <u>reasonably</u> induced the plaintiff not to file suit within the limitations period." <u>Id.</u> (quoting <u>McGregor v. Louisiana State Univ. Bd. of Supervisors</u>, 3 F.3d 850, 865-66 (5th Cir. 1993)) (emphasis added).

Dr. Olubadewo argues that Xavier concealed the fact that the College of Pharmacy was not in a condition of financial exigency because its enrollment in January 2006 was essentially the same as before Hurricane Katrina. He contends that, because he did not know about the enrollment figures, he had no reason to think that any discrimination had occurred. This argument fails for at least two reasons.

First, Dr. Olubadewo has presented no competent summary judgment evidence that anyone at Xavier intentionally or deliberately concealed the College's enrollment figures from him, that anyone at Xavier unmistakably understood that concealing such figures would induce him not to file a complaint with the Equal Employment Opportunity Commission, or that he reasonably relied on any conduct by Xavier when he failed to contact the Equal Employment Opportunity Commission until April 2007. Plaintiff testified that he knew at the end of October 2005 that he was not being rehired

while white, younger, female and non-Nigerian faculty members were rehired. He testified that he believed at that time that he was not rehired based on his race, age, sex and national origin, which is why he consulted an attorney. The limitations period began to run when Dr. Olubadewo knew of his termination, of Xavier's rehiring of the other faculty and of its concurrent decision not to rehire him. Because he believed in late October 2005 that he was the subject of discrimination, without knowing anything about the enrollment numbers, those numbers and when he learned of them are immaterial.

Second, Dr. Olubadewo argues that the <u>College</u> was not in a condition of financial exigency because its enrollment in January 2006 was projected to be, and turned out to be, almost 100% of its pre-Katrina enrollment. However, the enrollment numbers for the <u>College</u> alone are again immaterial. The College was and is part of the University. Plaintiff has produced no competent summary judgment evidence to contradict the Board of Trustees' declaration that the <u>University</u> was in financial exigency and that the Board terminated all faculty contracts for that reason. Nor has he produced any competent evidence to contradict the affidavits and testimony of Drs. Francis, Barron, Harris and Blake that the financial exigency faced by the entire <u>University</u> because of decreased enrollment and increased expenses required all departments, including the College, to cut faculty to the number required to deliver their curricula minimally, and that Drs. Harris and Blake complied with this directive. Dr. Olubadewo's conclusory allegations and

subjective belief are insufficient to create an inference of defendant's intent to conceal enrollment information and are inadequate to satisfy his burden in opposing summary judgment. <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 654 (5th Cir. 2004) (citing <u>Lawrence v. University of Tex.</u>, 163 F.3d 309, 313 (5th Cir. 1999); <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002)).

Plaintiff's claims of termination and failure to rehire under Title VII, whether based on race, gender or national origin, and the Age Discrimination in Employment Act are therefore time-barred and defendant is entitled to summary judgment as a matter of law on these claims.

E.    <u>Plaintiff's Section 1981 Claim for Failure to Rehire Is Time-Barred</u>

Defendant argues that plaintiff's race discrimination claim under 42 U.S.C. § 1981 based on Xavier's failure to rehire him (but not his termination) is time-barred by the one-year statute of limitations that applies to the failure to rehire claim.

Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." 42 U.S.C. § 1981(a). Section 1981(b) defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." <u>Id.</u> § 1981(b). Congress added this provision in 1991 to ensure

that Section 1981 reaches conduct that occurs <u>after</u> the formation of a contract.  <u>Jones v.</u>

<u>R.R. Donnelly & Sons Co.</u>, 541 U.S. 369, 382 (2004).

Section 1981 does not have its own statute of limitations.  Claims of

discriminatory <u>termination</u> under Section 1981 are subject to a federal, four-year,

"catchall" statute of limitations that was enacted in 1990, 28 U.S.C. § 1658(a), because

such claims only became actionable after Section 1981 was amended in 1991 to permit

claims based on conduct that occurred after the formation of the contract.  <u>Knox v. City</u>

<u>of Monroe</u>, 551 F. Supp. 2d 504, 512-13 (W.D. La. 2008) (James, J.) (citing <u>Jones</u>, 541

U.S. at 382; <u>Mitchell v. Crescent River Port Pilots Ass'n</u>, No. 07-30525, 2008 WL

410414, at *3-4 (5th Cir. Feb. 14, 2008)).  Xavier does <u>not</u> argue that plaintiff's

discriminatory <u>termination</u> claim under Section 1981 is time-barred.

However, Dr. Olubadewo's Section 1981 claim that Xavier discriminated against

him when it failed to hire him after his contract had been terminated is a

"pre-employment claim" of discrimination, which was actionable under Section 1981

before the 1991 amendments.  Therefore, the federal catchall statute of limitations does

not apply to this claim.  For plaintiff's failure to hire claim, "a federal court generally

must apply the state law statute of limitations that would govern an analogous state law

cause of action.  Under this rule, the court here would apply Louisiana's one-year

prescriptive period for torts."  <u>Mitchell v. Crescent River Port Pilots Ass'n</u>, No. 07-

30525, 2008 WL 410414, at *3 (5th Cir. Feb. 14, 2008) (citing La. Civ. Code Ann. art. 3492; Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462 (1975); Johnson v. Crown Enters., Inc., 398 F.3d 339, 341 (5th Cir. 2005)).

The one-year prescriptive period on plaintiff's failure to hire claim was suspended by Governor Blanco's executive order and the Louisiana Legislature's subsequent ratification of that order. The claim accrued no later than November 25, 2005, when the executive order expired. As previously stated, Dr. Olubadewo knew in October 2005 that a white professor had been rehired, while he had not been, and he believed at that time that Xavier's failure to hire him was racially discriminatory. Thus, prescription ran on this claim one year later, on November 25, 2006, but plaintiff did not file his lawsuit until August 28, 2007.

For the same reasons as discussed above, no equitable doctrines apply to preserve this claim. Because plaintiff's claim of allegedly discriminatory failure to rehire him in 2005 is time-barred, defendant is entitled to summary judgment in its favor on this claim as a matter of law.

F.    Plaintiff Cannot Establish a Prima Facie Case of Discriminatory Termination Under 42 U.S.C. § 1981

Plaintiff's only discrimination claim that is not barred by his failure to exhaust administrative remedies or by the running of limitations is his claim under Section 1981 of racially discriminatory termination of his employment.  However, this claim fails because Dr. Olubadewo cannot establish a prima facie case.

The standard of proof for Section 1981 claims is the same as for Title VII claims, and Section 1981 claims are analyzed under the Title VII evidentiary framework. Pegram v. Honeywell, Inc., 361 F.2d 272, 281 & n.7 (5th Cir. 2004); Roberson, 373 F.3d at 651.

Under that framework, plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  He can satisfy this burden with circumstantial evidence that (1) he was a member of a protected class, (2) he was qualified for the position, (3) his employment was terminated and (4) he was replaced by an individual of a different race, or that defendant treated similarly situated individuals of a different race more favorably than it treated him.  Jackson v. Dallas County Juvenile Dep't, 288 Fed. Appx. 909, 2008 WL 2916375, at *2 (5th Cir. 2008) (citing McDonnell Douglas Corp., 411 U.S. at 802; Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004)).

Xavier argues that plaintiff cannot establish a prima facie case because he was not "replaced" by anyone when only three of the four pharmacology professors in the Basic and Pharmaceutical Sciences Division were rehired. Xavier's argument in this regard fails to acknowledge that the fourth prong of a prima facie case can be established by showing that defendant treated similarly situated individuals of a different race more favorably than it treated Dr. Olubadewo.

Nonetheless, defendant is correct that plaintiff cannot prove the fourth prong because, as to his termination, it is undisputed he was treated the same as every other faculty member. Xavier's Board of Trustees declared a condition of financial exigency in October 2005 and decided to terminate all faculty contracts. The University terminated the employment of all faculty members, except those needed to respond to the disaster and to plan for the University's reopening in January 2006. Dr. Francis's October 28, 2005 letter to Dr. Olubadewo stated that "all faculty contracts have been terminated as null and void." Plaintiff testified that he understood from Dr. Francis's letter that everyone's contract was terminated, that he was treated the same as everyone else and that he did not believe that Xavier discriminated against him when his contract was terminated. Plaintiff's Exh. K, Dr. Olubadewo deposition at pp. 82-83, 165-66.

Accordingly, defendant is entitled to summary judgment as a matter of law on plaintiff's Section 1981 claim of discriminatory termination.

G.    Plaintiff Fails to Carry His Burden to Show Any Breach of Contract

Dr. Olubadewo argues that Xavier breached its tenure contract with him both when it terminated his employment and when it did not rehire him.

Xavier terminated all faculty members based on the Board of Trustees' declaration of financial exigency.  Xavier's University Faculty Handbook, which was incorporated into plaintiff's contract, provided that all faculty appointments, including tenure contracts, could be terminated at any time for "financial exigency, demonstrably bona fide."  Defendant's Exh. 4(J), excerpt from Xavier's University Faculty Handbook, at p. III-31; Defendant's Exh. 4(K), Dr. Olubadewo's tenure contract.  As previously discussed, plaintiff has produced no competent summary judgment evidence that the University's declared financial exigency in the aftermath of Hurricane Katrina was not bona fide.  Thus, Xavier did not breach his contract by terminating it.

Once plaintiff's contract was terminated, he no longer had a contract with Xavier. He has cited no law to support his allegation that any of his contractual rights survived the valid termination of his contract.  At that point, Xavier had no contractual obligation to rehire him or to accord him any preference in hiring for open positions.

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. . . .  The party demanding performance of a contract has the burden of proving its existence."  La Bo J P'ship v. Louisiana Lottery Corp., No.

2008-1279, 2009 WL 222794, at *3 (La. App. 1st Cir. Jan. 30, 2009) (citing La. Civ. Code art. 1906; <u>State v. Givens</u>, 776 So. 2d 443, 455 (La. 2001)).  Dr. Francis's October 28, 2005 letter does not create any contractual rights upon which plaintiff could rely in the face of the clear termination of his tenure contract as null and void.  Plaintiff has failed to show that Dr. Francis's comment that, "[s]hould there be changes in the enrollments to warrant re-engagement, we trust you will be available to rejoin Xavier," created a new contractual right to be rehired.  Dr. Olubadewo has not carried his burden to show that he and Xavier, via Dr. Francis's letter, mutually agreed to the certain and definite terms of a new contract.  The letter contains no offer and acceptance language, which are fundamental to confection of a contract.  <u>Id.</u>  The court cannot create a new contract and impose obligations on Xavier based on what plaintiff "expected," in the absence of "the most basic principle of contract law, that it is an agreement."  <u>Id.</u>

Accordingly, defendant is entitled to summary judgment in its favor as a matter of law on plaintiff's breach of contract claims.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH

PREJUDICE, plaintiff to bear all costs of this proceeding. Judgment will be entered

accordingly.

New Orleans, Louisiana, this ____6th____ day of April, 2009.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE